IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TORI BAILEY, | : |
|                 Plaintiff,<br>v. | : CIVIL ACTION<br>:<br>: NO. 11-cv-01153 |
| LYNDA M. HALEY, CAROL NAVON,<br>JOEL A. JOHNSON & THE<br>MONTGOMERY COUNTY HOUSING<br>AUTHORITY, | : |
|                 Defendants. | : |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                                             **March ___, 2012**

Presently before the Court is Defendants' Lynda M. Haley ("Haley"), Carol Navon ("Navon"), Joel A. Johnson ("Johnson"), and the Montgomery County Housing Authority (the "MCHA") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12) and Plaintiff Tori Bailey's ("Plaintiff" or "Bailey") Response thereto (Doc. 15.) Upon consideration of the parties' motions with briefs and exhibits, this Court will grant Defendants' Motion to Dismiss.

**I.   FACTS**

This 42 U.S.C. § 1983 action arises out of the allegation that Defendants, acting under color of state law, violated Plaintiff's civil rights by terminating her Section 8 subsidized housing benefits without due process of law. (Amended Complaint ¶¶ 65-68.) The relevant facts are as follows.

In the spring of 2010, Plaintiff became involved in a relationship with a former boyfriend

of one Jessica Ford ("Ms. Ford"), causing a dispute between the two women. (Am. Compl. ¶¶ 17-18.) On or about April 14, 2010, a physical altercation broke out between the two women and criminal assault charges were subsequently filed against Plaintiff. (Am. Compl. ¶¶ 17-27.) As a result, Plaintiff received a letter dated July 21, 2010, from the MCHA informing her that her Section 8 benefits were being terminated pursuant to 24 C.F.R. §§ 982.551 and 982.552 for engaging in violent criminal behavior. (Mot. for TRO, Ex. C.) On August 31, 2010, an administrative hearing was conducted at Plaintiff's request to contest the termination of her benefits. (Am. Compl. ¶¶ 35-36.) At the hearing, Plaintiff and a witness for Plaintiff testified that Plaintiff indeed engaged in physical violence toward Ms. Ford, although Plaintiff claimed she did so only in self-defense. (Mot. for TRO, Ex. D at 18-36, 47-48.) Detective James Angelucci from the Norristown Police Department testified that Plaintiff was the aggressor in the altercation. (Am. Compl. ¶ 45.) The MCHA declined to subpoena Ms. Ford to testify. (Am. Compl. ¶ 51.)

The hearing officer, Mark W. Voigt, Esq., finding that Plaintiff engaged in violent criminal conduct, terminated her benefits. Plaintiff received notice of such termination via a letter dated October 25, 2010, stating that the decision was "final," and silent on Plaintiff's right to appeal such decision. (Am. Compl. ¶¶ 55-58.) Plaintiff did, however, receive verbal notice of her right to appeal any decision resulting from the hearing while being sworn in prior to her testimony. (Mot. for TRO, Ex. D at 6-7.) Plaintiff stopped receiving Section 8 benefits as of December 1, 2010. In March 2011, Plaintiff pleaded guilty to disorderly conduct as a summary offense, and all other criminal charges concerning the altercation with Ms. Ford were dropped. (Am. Compl. ¶ 32.)

On March 18, 2011, Plaintiff filed her Complaint, which was amended on May 4, 2011.

The Amended Complaint contains one count, for a violation of 42 U.S.C. § 1983, alleging that Defendants violated her due process rights by: (1) providing insufficient notice of the events giving rise to the termination of her Section 8 benefits; (2) terminating her benefits solely on the basis of uncorroborated hearsay evidence and failing to provide Plaintiff with an opportunity to confront and cross-examine adverse witnesses; (3) relying on evidence outside of the record to make a decision; (4) placing the burden of proof on Plaintiff to prove that her benefits should not be terminated, rather than placing the burden of proof on the MCHA; (5) misleading Plaintiff with respect to her appellate rights by stating in the transmittal letter that the decision was "final," without also informing her that she could appeal to the Court of Common Pleas; and (6) failing to ensure the neutrality of the hearing officer.  (Am. Compl. ¶ 68.)  On May 18, 2011, Defendants filed their Motion to Dismiss the Amended Complaint.

## II.     STANDARD OF REVIEW

**Motion to Dismiss Pursuant to Federal Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). In Twombly, the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [will] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint

demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211 (citation omitted). If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

### III.   DISCUSSION

**A.   Plaintiff's Due Process Rights were not Violated[1]**

**1.   The Statement of Reasons for Notice of Termination was Sufficient**

Plaintiff's first due-process argument is that Defendants provided her with insufficient notice of the events giving rise to the termination of her Section 8 benefits. Housing and Urban Development regulations require that a termination notice: "(1) Contain a brief statement of reasons for the decision [to terminate assistance]; (2) State that if the family does not agree with the decision, the family may request an informal hearing on the decision; and (3) State the deadline for the family to request an informal hearing." 24 C.F.R. § 982.555(c)(2). On this issue, Ervin v. Hous. Auth. of the Birmingham Dist., 281 Fed. Appx. 938 (11th Cir. 2008) is instructive. The plaintiff in Ervin, like the Plaintiff here, alleged that a termination notice provided insufficient notice of the reasons for the termination. 281 Fed. Appx. 938. Addressing this argument, the Eleventh Circuit stated that a "statement of reasons" for termination of Section 8 benefits "must be sufficiently specific for it to enable an appellant to prepare rebuttal evidence to introduce at his hearing appearance." Id. at 941. The court held that the notice was sufficient

---

[1] At the outset, this Court notes that Defendants Haley, Nevon, and Johnson cannot be sued under 42 U.S.C. § 1983 in their individual capacities because of the doctrines of absolute and qualified immunity. It is well established that judges and prosecutors are immune from liability taken in the performance of judicial or quasi-judicial acts. See Buckley v. Fitzsimmons, 509 U.S. 259, 270 (1993). This immunity extends to include housing authority officials when advocating against a tenant in administrative proceedings. See Perry v. Cty of Milwuakee Hous. Auth. 2007 U.S. Dist. LEXIS 29009 (E.D. Wis. April 18, 2007) aff'd sub nom Perry v. Perez, 269 Fed. Appx. 589 (7th Cir. 2008). Thus, Haley is entitled to absolute quasi-judicial immunity for her role in Plaintiff's termination hearing. This Court finds Plaintiff's argument that Haley was acting as witness rather than an advocate, and thus is not entitled to quasi-judicial immunity, to be without legal authority and factually unconvincing in light of Haley's role as demonstrated by the hearing transcript. Moreover, each individual defendant is entitled to qualified immunity because Plaintiff did not allege facts showing that she suffered a violation of her constitutional rights, as discussed herein. See Pearson v. Callahan, 555 U.S. 223 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

when it indicated that Section 8 benefits would be terminated due to an unidentified family member's "'[d]rug related activity . . . use of illegal drug sales and/or purchase.'"  Id.  The court observed that the notice was adequate despite its failure to specify the individual alleged to commit the illegal activity or the date of the offense.  Id.

In this case, the notice letter provided a sufficient "statement of reasons" on a variety of grounds.  First, it was more detailed than the notice in Ervin as it specifically identified which member of Plaintiff's family was at issue.  Second, given that Plaintiff had no prior criminal record and was aware of the pending criminal charges against her for assault of Ms. Ford, Plaintiff should have reasonably known what incident the letter was referring to and it thus served the purpose of allowing her to prepare rebuttal evidence for her hearing.  Indeed, immediately prior to her termination hearing, Plaintiff stopped at the District Judge's office to pick up a document related to the criminal charges against her.  Plaintiff was well aware of the violent criminal activity in which she was involved, as well as the specific charges against her, and thus had adequate opportunity to prepare for the termination hearing.  Her lack-of-notice argument is disingenuous and does not state a claim for a violation of due process.

**2.  Plaintiff's Hearsay Argument does Not State a Claim under 42 U.S.C. § 1983**

Plaintiff next alleges that the hearing officer erred by relying on uncorroborated hearsay evidence of a biased witness, Ms. Ford, and failed to provide Plaintiff with an opportunity to confront and cross-examine adverse witnesses.  The rule on hearsay evidence in administrative agency proceedings such as Plaintiff's termination hearing is: "'hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the [hearing officer], if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand.'"  Zajac v. Altoona Hous. Auth., 626 A.2d 1271,

1275 (Pa. Cmwlth. Ct. 1993) (alteration in original) (citation omitted). In this case, Ms. Ford's hearsay statements, unobjected to and relied upon by the hearing officer, were corroborated by competent evidence. Specifically, these statements were corroborated by an affidavit of probable cause signed by Detective James Angelucci ("Detective Angelucci") concerning the assault charges filed against Plaintiff (Mot. for TRO, Ex. G); Detective Angelucci's testimony that a prima facie case was established against Plaintiff concerning such assault charges (Mot. for TRO, Ex. E at 10); and admissions by Plaintiff and her witness at the termination hearing, conceding that Plaintiff engaged in violent, physical activity with Ms. Ford (Mot. for TRO, Ex. D 20-21, 48, 52.) Thus, the hearing officer's findings were in line with the general rule concerning hearsay in administrative agency hearings, and are supported by reliable evidence on the record.[2]

As a wholly separate matter, Plaintiff's claim that she was denied the opportunity to confront and cross-examine witnesses is patently without merit as the hearing transcript demonstrates that she clearly was advised of these rights at the beginning of her hearing. (Mot. for TRO, Ex. D at 5-6.) Indeed, the hearing officer stated to Plaintiff at the outset "[y]ou may cross-examine any witness the Housing Authority may present" (Mot. for TRO, Ex. D at 5) and there is nothing in the record to suggest otherwise.

**3.     The Evidence Submitted Outside of the Record was Properly Accepted**

Plaintiff further argues that the hearing officer violated her due process rights because he

---

[2] Further, the hearing officer is not named as an individual defendant in this case, nor could he be as he enjoys quasi-judicial immunity. See Butz v. Economou, 438 U.S. 478, 512-13 (1978). Alternatively, even if a 42 U.S.C. § 1983 action could be maintained under Plaintiff's inadequate training theory, Plaintiff has failed to sufficiently plead that the MCHA had a custom, practice or policy of admitting hearsay evidence in administrative proceedings to the extent of causing constitutional injury; the Supreme Court has noted that a pattern—and not merely one instance—of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate the "deliberate indifference" to constitutional rights required to maintain a § 1983 action under the inadequate training theory. See Bd. of Comm'rs of Bryan Cnty. v. Brown 520 U.S. 397, 409 (1997). Thus, if Plaintiff has an issue with the use of hearsay evidence at her administrative hearing, the proper avenue is not a 42 U.S.C. § 1983 action, but an appeal to the Court of Common Pleas.

considered evidence outside of the record in making his determination. This argument fails because the evidence was immaterial to his decision. The hearing officer simply accepted photographs of a witness for Plaintiff who falsely identified himself at the hearing as "Michael Jones." (Mot. for TRO, Ex. E ¶ 11.) At the hearing, Detective Angelucci questioned whether this man was actually Raymond Cook, Plaintiff's former boyfriend. The man falsely denied that he was Raymond Cook, whom he stated was his brother. To establish that the man was indeed Raymond Cook, Detective Angelucci submitted photographs of Raymond Cook to the hearing officer. The hearing officer's acceptance of these photographs—immaterial to his ultimate decision and used only to clarify the identity of a witness testifying under a fraudulent name— did not constitute a violation of due process.

4.   **The Burden of Proof was Properly Placed on the MCHA**

Plaintiff's next argument is that her due process rights were violated because the hearing officer placed the burden of proof at the hearing on her. This argument is patently without merit. The hearing officer's Decision concludes that the "MCHA has met its burden of proving, by a preponderance of the evidence, that Tenant violated her obligations under the Program by engaging in violent criminal activity." (Mot. for TRO, Ex. E at 8.) This demonstrates that the burden of proof was properly placed on the MCHA.

5.   **Plaintiff was not Misled as to her Right to Appeal**

Plaintiff further argues that she was misled as to her right to appeal, depriving her of due process. Pennsylvania courts have found that there is no federal or local agency mandate requiring administrative agencies to give notice to a party of his right to appeal, where such right to appeal is duly published by the agency or the legislature. See Mogil v. Commw. of Pa. Unemp't Comp. Bd. of Review, 413 A.2d 480, 481 (Pa. Commw. Ct. 1980) (citing Walker v.

Unemp't Comp. Bd. of Review, 381 A.2d 1353 (1978)).  The Pennsylvania Legislature clearly sets forth the right to appeal from adjudication by a local agency such as the MCHA.  2 Pa.C.S.A. § 752 states that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . . ."  Therefore, because the right to appeal was published by the Pennsylvania Legislature, the MCHA was not required to give notice to Plaintiff of her right to appeal the termination decision.  Moreover, despite there being no requirement to do so, the hearing officer provided oral notice at the hearing of Plaintiff's right to appeal.  (Mot. for TRO, Ex. D at 6-7.)  Thus, this argument is without merit.

**6.     The Hearing was Conducted by an Appropriate and Neutral Hearing Officer**

Lastly, and without the support of a single authority, Plaintiff alleges that the selection of Mark W. Voigt, Esq. as her hearing officer violated her due process rights.  Under federal regulations, "[t]he hearing may be conducted by any person or persons designated by the [Housing Authority], other than a person who made or approved the decision under review or a subordinate of this person."  24 C.F.R. § 982.555(e)(4).  Plaintiff has pleaded nothing to suggest that the hearing officer did not satisfy these criteria.  Thus, Plaintiff has failed to state a claim for a violation of due process on this basis.

**B.     Plaintiff has Failed to Plead that her Due Process Rights were Deprived due to an Official Custom, Practice or Policy of the MCHA**

As she must to state a claim under 42 U.S.C. § 1983, Plaintiff asserts that the MCHA had an administrative custom, practice or policy lacking in the proper instructions on due process rights in conducting pre-termination hearings, and the MCHA failed to train its employees on due process protections applicable in pre-termination hearings for Section 8 benefits.  Having

failed to state a claim for a violation of due process, Plaintiff cannot establish liability based upon an alleged custom, practice or policy or failure to train.  Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989).  Thus, this Court need not consider other issues raised by the parties on this issue.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint will be GRANTED.

An appropriate order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**